J-A19022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 560 EDA 2023 |

Appeal from the Order Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000992-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D.Y.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 561 EDA 2023 |

Appeal from the Decree Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000247-2022

BEFORE:   BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 30, 2023**

C.T. appeals from the September 26, 2022 decree granting the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to S.D.Y.T., born in September

---

[*] Retired Senior Judge assigned to the Superior Court.

2020.[1]  Appellant also appeals from the separate permanency review order, entered the same date, that changed S.D.Y.T.'s permanency goal to adoption. We affirm the goal change order and vacate the termination decree as moot.

S.D.Y.T. was born seven weeks premature and was immediately admitted into the neonatal intensive care unit.  She tested positive for Marijuana and Oxycodone.  Mother's test results revealed those substances, as well as Fentanyl and Tramadolin.  DHS obtained protective custody of the child and placed her with her current pre-adoptive resource, T.M.  The court adjudicated S.D.Y.T. dependent on November 17, 2020, approximately two-and one-half months after her birth.

Although Appellant was identified on the birth certificate, he had no contact with the child in the two years since her birth.  *See* N.T., 9/26/22, at 13-16, 24-25.  He did not attend the dependency proceedings, care for the child, or comply with any of his goals under the single case plan ("SCP"), including disclosing his location to the agency.[2]  *Id*. at 13, 16, 24.  In this regard, during the evidentiary hearing, Mother testified that Appellant was not the birth father, but merely a friend who sympathized with her situation

---

[1] In a separate decree, the trial court also terminated the parental rights of T.Y. ("Mother"), who filed a separate appeal.

[2] The certified record does not support several of the trial court's factual findings that it gleaned from DHS's petition to terminate Appellant's parental rights.  For example, the testimony that DHS presented at the hearing belies the assertion that Appellant showed any interest in being a parental resource for the child.  *See* N.T. 9/26/22, at 13-16, 24-25.

- 2 -

because she had been raped by a now-deceased family acquaintance and became pregnant with S.D.Y.T. as a result of that victimization. *Id*. at 63-64.

On April 13, 2022, DHS filed a petition to involuntarily terminate Appellant's parental rights to S.D.Y.T. pursuant to § 2511(a)(1), (2), (5), and (8) and § 2511(b). DHS attached a copy of the birth certificate and the details of Appellant's acknowledgment of paternity. *See* 23 Pa.C.S. § 5103(a) ("[having filed an acknowledgment of paternity], the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child, and the child shall have all the rights and duties as to the father which the child would have had if the father had been married to the mother at the time of birth."). The trial court appointed Jay Stillman, Esquire to represent Appellant, who responded by filing a petition for paternity testing.[3] The petition noted both that

_____

[3] The record is silent concerning the appointment of legal interest counsel for two-year-old child S.D.Y.T. as contemplated in 23 Pa.C.S. § 2313(a) ("The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents."). It is clear, however, that the court appointed Irene Levy, Esquire to serve as guardian *ad litem* during the termination hearings and advocate the child's best interests. It is our duty to ascertain whether the trial court determined that counsel could simultaneously represent the child's best interests and legal interest, *i.e.*, her preferred outcome. However, the certified record established that S.D.Y.T. was two years old at the time of these proceedings and incapable of articulating a well-settled preference with respect to the termination of the rights of Appellant, whom she never met, we observe no structural defect in the underlying proceedings pursuant to § 2313(a). *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that where "the preferred outcome of a child is incapable of ascertainment" the
*(Footnote Continued Next Page)*

Appellant is seeking to challenge his paternity and that he has not engaged in the dependency proceedings. The trial court granted the petition and ordered the paternity testing, the results of which excluded Appellant from biological parentage. Based, in part, on the test results confirming that Appellant "is not the father after all," counsel sought leave to forgo the court's prior instruction "to have a conversation with his client prior to the next court date." Motion to Remove Requirement for Counsel to Speak with Client, 9/26/22, at 1, 2 (quoting Status Review Order, 8/8/22 cleaned up)). The certified record does not reveal whether the trial court granted counsel's motion, but counsel's false impression concerning the paternity test's effect on the termination proceedings is obvious. Rather than discuss with Appellant the alternative of relinquishing parental rights voluntarily pursuant to § 2501, and thereby alleviating DHS's need to terminate parental rights involuntarily, counsel represented his client as if the results of the paternity test would resolve the issue of Appellant's parental rights unilaterally.[4]

_____

mandate of § 2313(a) "is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.").

[4] A parent may file a petition to relinquish his or her parental rights to an agency pursuant to § 2501, which states:

§ 2501. Relinquishment to agency

(a) Petition.-- When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or,

*(Footnote Continued Next Page)*

- 4 -

At the outset of the September 26, 2022 hearing, the trial court acknowledged that the results of the paternity test excluded Appellant, who did not attend the hearing because he was incarcerated. N.T., 9/26/22, at 6. The court immediately excused Attorney Stillman, but upon DHS's interjection that Appellant "is on the birth certificate. So [the agency] will need to have his rights terminated," the trial court reversed course and directed Attorney Stillman to participate in the hearing. *Id*. at 6-7. Counsel noted his confusion but ultimately complied with the court's directive. *Id*. at 7.

While DHS focused upon terminating Appellant's rights involuntarily to facilitate the anticipated adoption, the agency neglected to see if Appellant, the non-biological father who never maintained any contact with S.D.Y.T., desired to relinquish his rights voluntarily or consent to adoption. Instead, preoccupied with the perceived "need" to terminate Appellant's rights involuntarily, DHS re-asserted "because he's on the birth certificate[,the agency] will need to mark and move the DNA test, and then have [Appellant's] rights terminated for purposes of the hearing." *Id*. at 7. Thereafter, DHS

---

whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.

23 Pa.C.S. § 2501(a).

presented evidence to establish the statutory grounds to involuntarily terminate Appellant's parental rights, and following the evidentiary hearing, the trial court entered a decree terminating Appellant's parental rights pursuant to § 2511(a)(1), (2), (5), (8) and § 2511(b).  The trial court also filed a separate order changing S.D.Y.T.'s permanency goal from reunification to adoption.

Appellant filed notices of appeal to this Court at both above-captioned docket numbers, along with respective concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5] Thereafter, he filed a petition to amend the birth certificate, which the trial court granted on November 10, 2022, directing "the Pennsylvania Department of Health, Division on Vital Records" to remove Appellant from the "Birth Certificate as the named [f]ather."  Order, 10/10/22.  DHS subsequently filed a petition to terminate the parental rights of any unknown father, noting "[t]he child's birth certificate [now] reflects father as 'information not recorded' and is therefore unknown."  DHS Petition, 5/31/23, at 1.

Appellant presents the following questions, which we reordered for ease of review:

> 1.     Did the trial court err and/or abuse its discretion in entering a Decree that Appellant involuntarily lost parental rights to the minor child S.D.Y.T., where the trial court had previously found

---

[5] After Attorney Stillman filed facially untimely appeals, this Court deemed him *per se* ineffective.  The trial court appointed Maureen F. Pié, Esquire, and we granted the ensuing petitions to appeal *nunc pro tunc*.

that Appellant was not S.D.Y.T.'s parent, and therefore did not have any parental rights to terminate[?]

2. Did the trial court err and/or abuse its discretion in entering an Order changing the minor child S.D.Y.T.'s permanency goal from reunification with Appellant where Appellant was identified as a parent of the child on said Order, because the trial court had previously found that Appellant was not the child's parent, and therefore did not have any legal right to reunification with the child[?]

3. Did the trial court err and/or abuse its discretion by entering the aforesaid Decree without cause, thereby creating, for Appellant, vulnerability to the **collateral consequences** of an involuntary termination of parental rights, and thus denying him constitutional due process under both the Pennsylvania and United States Constitutions[?]

4. Did the trial court err and/or abuse its discretion by entering the aforesaid Order without cause, thereby creating, for Appellant, vulnerability to the **collateral consequences of a goal change** to Adoption and thus denying him constitutional due process under both the Pennsylvania and United States Constitutions[?]

5. Did the trial court err and/or abuse its discretion by thus creating further delay for the child's permanency by causing Appellant to clear the record through this appeal. Such delay is contrary to judicial economy and the child's right to permanency[?]

Appellant's brief at 8-9 (emphasis in original).[6]

Appellant's arguments are easily grouped into three essential contentions: (1) the termination decree and goal change order were

---

[6] We note with displeasure that Appellant's substantive arguments do not align with the statement of issues, in violation of Pa.R.A.P. 2111(a) (stating that each argument section shall be "divided into as many parts as there are questions to be argued"). Counsel is cautioned to comply with the rules of appellate procedure in future filings.

unnecessary after Appellant presented to the court the results of the paternity test that excluded him as a possible birth parent; (2) the trial court violated Appellant's constitutional rights in terminating parental rights and changing S.D.Y.T.'s permanency goal in relation to a non-genetic parent; and (3) the impact of the trial court's goal change order was to delay S.D.Y.T.'s permanency unnecessarily.

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Similarly, we also review the trial court's permanency determinations for an abuse of discretion. *See Interest of J.B.*, 296 A.3d 1234, 1238 (Pa.Super. 2023). As with our review of the factual record in termination cases, we must also "accept the findings of fact and credibility determinations of the trial court if they are supported by the record," but, again, we are not bound by the trial court's "inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Initially, Appellant complains that the "the trial court lost jurisdiction over him under both the Juvenile Act and the Adoption Act" once he presented the results of the paternity test to the court. Appellant's brief at 21. This assertion is founded on the faulty premise that the test result was tantamount to a legal determination of paternity. It was not. Indeed, while the results of the paternity test were relevant in determining the child's genetic parentage, that issue was not actually before the court in light of the birth certificate identifying Appellant as the father. In this regard, the Pennsylvania statute governing paternity explicitly provides, in part, that "an acknowledgment of paternity shall constitute conclusive evidence of paternity without further judicial ratification[.]" 23 Pa.C.S § 5103. Furthermore, absent fraud, which is not implicated in this case, the results of the paternity test could not divest Appellant of his parental rights and responsibilities. *See S.N.M. v. M.F.*, 175

A.3d 333, 338 (Pa.Super. 2017) (holding, absent proof of fraud, even if appellant was not child's biological father, he remained the child's legal father based upon his acknowledgment of paternity). Thus, contrary to Appellant's protestations, as a matter of law, so long as Appellant was listed on the birth certificate, he remained the legal father of S.D.Y.T. until his parental rights were voluntarily relinquished or involuntarily terminated. As Appellant did not relinquish his parental rights, the court did not err in conducting the involuntary termination and goal change proceedings notwithstanding the documentation excluding him as a birth parent. Hence, Appellant cannot meritoriously assert that the results of the paternity test stripped the trial court of jurisdiction over the petitions to terminate his parental rights and change S.D.Y.T.'s permanency goal from reunification to adoption.

The crux of Appellant's second assertion is that where, as here, a parent is not the birth father and did not exercise his parental rights beyond executing the acknowledgment of paternity and appearing on the birth certificate, the collateral consequences of involuntary termination impinge on his right to due process insofar as the mere fact of involuntary termination presents "an enhanced risk of infringement or loss of rights to the care, custody and control of [his] other children with whom he has intact parental rights." Appellant's brief at 14. He observes, for example, that the Juvenile Act regards "a prior involuntary termination of parental rights as an aggravated circumstance in dependency matters related to other children." *Id*.

As Appellant accurately observes, a finding of aggravated circumstances based upon the involuntary termination of parental rights of one child greatly impacts his rights as to a different child in any future dependency proceedings. *See* 42 Pa.C.S. § 6302 (defining aggravated circumstances as, *inter alia*, "(5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent."). Essentially, an adjudication of aggravated circumstances subjects a parent to the possible divestment of reunification resources and the hastening of the goal change. *See* Pa.R.J.C.P. 1705 (B) ("If the court finds aggravated circumstances exist, the court shall determine whether reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made[.].")

Thus, noting that a parent's constitutional right to direct the care, custody, and control of their child is a fundamental right that subjects government interference to strict scrutiny,[7] Appellant contends that less restrictive measures exist to sever parental rights in anticipation of adoption,

---

[7] As the United State Supreme Court expressed in ***Troxel v. Granville***, 530 US 57, 65 (2000), "[t]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Pursuant to the strict scrutiny analysis, government action that significantly interferes with the exercise of a fundamental right is upheld only if it is necessary to promote a compelling state interest and if it is narrowly tailored to effectuate that purpose. ***See Nixon v. Commonwealth***, 839 A.2d 277, 287 (Pa. 2003) ("Where laws infringe upon certain rights considered fundamental, . . . courts apply a strict scrutiny test.").

*i.e.*, providing an opportunity to voluntary relinquish parental rights or amending the child's birth certificate. ***Id***. at 13-15 (footnotes omitted). He continues, "[t]he burden of bearing an aggravated circumstance on one's parental rights to one's other children's care and control is a burden on a fundamental right which requires the court to apply strict scrutiny analysis: the compelling state interest involved (in this case to allow Child to achieve safe permanency) may only be accomplished by the least restrictive means available." ***Id***. at 15, 19. As the trial court neglected to pursue the least restrictive means in severing Appellant's legal connection with S.D.Y.T, he asserts that the termination decree constitutes a denial of due process under the Fourteenth Amendment to the United States Constitution and the due process and remedies clauses of the Constitution of Pennsylvania.[8]

---

[8] The United States Supreme Court interpreted the Fourteenth Amendment as follows:

> The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, guarantees more than fair process. The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests.

***Troxel***, ***supra*** at 65 (some quotations omitted) (citations omitted).

Similarly, the Pennsylvania due process clause provides, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of
*(Footnote Continued Next Page)*

As Attorney Stillman neglected to assert this due process challenge during the termination and goal change proceedings, the trial court did not address this aspect of Appellant's claims. Hence, it is waived. **See** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Furthermore, in passing on the novel claim as presented in the Rule 1925(b) statement, the court reasoned that, because Appellant was identified as the birth father on the birth certificate and failed to remove that designation during the dependency proceedings, the action to involuntarily terminate his parental rights was warranted. Thus, the court's Rule 1925 opinion did not confront Appellant's argument regarding the collateral consequences of the termination of his parental rights. **See** Trial Court Opinion, 4/13/23, at 8, 9.

Furthermore, assuming, *arguendo*, that the cumulative effect of Attorney Stillman's documentation of the paternity test, misapprehension of the test's significance on the proceedings, attempt to be released from the

---

acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1, And finally, our remedies clause provides, in relevant part:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11(a).

- 13 -

hearing, and bewilderment at his necessity to participate constitutes an objection to the trial court's decision to proceed with the termination hearing that satisfies Rule 302(a), no relief is due. Our reasoning follows.

Preliminarily, as it relates specifically to the goal change order, the polestar of any dependency matter must be the "safety, permanency[,] and well-being of the child," which takes precedence "over all other considerations, including the conduct and the rights of the parent." *In the Interest of M.T.*, 101 A.3d 1163, 1175 (Pa.Super. 2014). In particular, Juvenile Act § 6351(f)(1)-(5), (6), (9) mandates that a trial court consider a number of discrete factors in adjudicating a goal change petition. *See In re J.B.*, *supra* at 1239. Inasmuch as a goal change is not a basis for finding aggravated circumstances in a future proceeding pursuant to § 6302, Appellant's argument concerning the collateral consequences of the termination decree does not translate to the goal change order entered in this case. In fact, Appellant's status as a legal parent has no bearing on the child's best interests or the statutory factors that the juvenile court is mandated to review in adjudicating a goal change petition. As the certified record supports the trial court's review of the relevant elements of the best-interest determination, we do not disturb it.

For the identical reasons, we reject Appellant's contention, listed as his fifth question presented, that the goal change order delayed S.D.Y.T.'s permanency by causing Appellant to initiate this appeal. Appellant raised this

claim only in the Rule 1925(b) statement that he filed at the dependency docket.[9] In relation to the goal change order, the change of a permanency goal from reunification essentially relieves the agency from continuing any reunification efforts. *See* Pennsylvania Dependency Benchbook, 3rd Edition (2019) § 14.4. Accordingly, it did not affect the potential termination of Appellant's parental rights. *Id*.at § 14.3 ("Although the processes of goal change to adoption and the filing of the petition for termination of parental rights go hand in hand, they are two separate issues."). Hence, neither the goal change order nor the ensuing appeal from that order bears on the anticipated adoption. *See e.g.*, *In re Adoption of S.E.G.*, 901 A.2d 1017, 1026 (Pa. 2006) ("an agency may file a termination petition even where reunification remains the permanency goal for the child"); *In re M.T.*, 101 A.3d 1163, 1166 (Pa.Super. 2014) (*en banc*) ("a goal change from reunification to adoption is not a necessary prerequisite to the initiation of involuntary termination proceedings."). Consequently, this claim also fails.

Turning to the decree terminating Appellants' parental rights, we agree with the trial court's conclusion that, notwithstanding the conclusive scientific evidence establishing Appellant's lack of genetic relationship with S.D.Y.T., so long as the birth certificate identified Appellant as the birth father, it was

---

[9] Accordingly, any argument asserting the ostensible delay caused by Appellant's appeal from the termination decree is waived. *See* 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

appropriate for the court to involuntarily terminate Appellant's parental rights in anticipation of the child's adoption. While we do not countenance DHS's refusal to seek Appellant's voluntary relinquishment as an alternative to involuntary termination under the facts of this case, we have no basis to conclude that the trial court erred in terminating Appellant's parental rights involuntarily in this situation.

Having found no reversible error, we must nevertheless acknowledge that the trial court entered a November 10, 2022 order removing Appellant's name from the birth certificate and therefore rendered the termination decree moot. Generally, "an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." **In re D.A.**, 801 A.2d 614, 616 (Pa.Super. 2002) (*en banc*) (citation omitted). However, we may reach the merits of a moot question if one of the following exceptions applies: "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court." **Id**. (citations omitted).

Here, no case or controversy currently exists because the trial court granted Appellant's request to modify S.D.Y.T.'s birth certificate and remove the parental designation, thereby removing the impediment to adoption. Moreover, none of the exceptions to the mootness doctrine apply because it does not involve a matter of public importance and, unlike Appellant's chosen

path in the case at bar, similarly situated parents can avoid the potential collateral consequences simply by relinquishing their parental rights voluntarily. Thus, this case is moot and no reason exists to circumvent the doctrine to reach the merits of Appellant's arguments relative to the termination decree.

When a case becomes moot due to an interceding coincidence, the "established practice" is for the appellate court to "vacate the judgment below and remand with a direction to dismiss." *See e.g.* *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). Our High Court recently reiterated this principle in *Ball v. Chapman*, 289 A.3d 1, 12 n.37 (Pa. 2023). It observed, "'in dealing with a civil case from a court in the federal system which has become moot while on its way to the Supreme Court of the United States or pending the Court's decision on the merits,' and where the lack of review is attributable to 'happenstance,' the judgment will be reversed or vacated, and remanded with instructions to dismiss the case as moot." *Id*. (quoting *Munsingwear*, *supra* at 39) (cleaned up).

Accordingly, insofar as the order modifying S.D.Y.T.'s birth certificate permanently removed Appellant's name from the birth certificate and that document no longer impedes the child's anticipated adoption, the only residual effect of the decree involuntarily terminating Appellant's parental rights is to potentially contaminate future dependency actions unnecessarily. Thus, to avoid the harmful repercussions of the now-superfluous decree, we vacate the

decree and remand with instructions for the court to dismiss the involuntary termination proceeding against Appellant as moot.

Goal change order affirmed. Decree vacated, and case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/30/2023